Mandana Jafarinejad, Esq. (SBN 273904)
mandana@mjintellectualproperty.com
Law Offices of Mandana Jafarinejad, P.C.
1 Park Plaza, Suite 600
Irvine, California 92614
Telephone: (949) 833-7125

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DEALERSGEAR, INC., a California Corporation;<br><br>Plaintiff,<br><br>v.<br><br>Get My Auto, LLC, a California limited liability corporation; Amir Razavi, an individual; Ihab Abuwarda, an individual; Wassim Abuwarda, an individual; Sami Halwani an individual and DOES 1-10, inclusive,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br>1. **Copyright Infringement**<br>2. **Trademark Infringement**<br>3. **Defamation--Libel**<br>4. **Defamation Per Se**<br>5. **Trade Libel**<br>6. **Intentional Infliction of Emotional Distress**<br>7. **Negligent Infliction of Emotional Distress**<br>8. **Tortious Interference with Prospective Economic Advantage**<br>9. **False Light by Written Publication**<br>10. **Preliminary and Permanent Injunction**<br>11. **Breach of Contract**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff DealersGear, Inc. (hereinafter "Plaintiff"), by and through its attorney of record, brings this suit against Defendants and alleges as follows:

## PARTIES

1. Plaintiff is, and at all times mentioned was, a California corporation headquartered in Irvine, California.

2. Defendant Get My Auto, LLC (hereinafter "Get My Auto" is a California corporation headquartered in Santa Ana, California.

3. Defendant Amir Razavi, upon information and belief, was at all times relevant hereto, a competent adult over the age of eighteen years, and a resident of Orange County, California.

4. Defendant Ihab Abuwarda, upon information and belief, was at all times relevant hereto, a competent adult over the age of eighteen years, and a resident of Orange County, California.

5. Defendant Wassim Abuwarda, upon information and belief, was at all times relevant hereto, a competent adult over the age of eighteen years, and a resident of Orange County, California.

6. Defendant Sami Halwani upon information and belief, was at all times relevant hereto, a competent adult over the age of eighteen years, and a resident of Orange County, California.

7. Plaintiff is unaware of the true names, capacities, relationships, and extent of participation in the conduct herein alleged of the Defendants sued herein as Does 1 through 10, inclusive, but on information and belief alleges that said Defendants are legally responsible for it. Plaintiff will amend this complaint to allege the true names and capacities of the Doe Defendants when ascertained.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 17 U.S.C. § 101, *et seq.* The Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) as those claims are so related to Plaintiff's federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9. This Court has personal jurisdiction over Defendant Get My Auto, LLC, because, it is a California corporation headquartered in Santa Ana, Orange County, California and this lawsuit arises out of wrongful conduct, which occurred in the County of Orange, California.

10. This Court has personal jurisdiction over Defendant Amir Razavi because, on information and belief, Defendant Razavi is a resident of California, and this this lawsuit arises out of Defendant Razavi's purposeful and unlawful conduct knowingly directed to Plaintiff within the State of California and this District.

11. This Court has personal jurisdiction over Defendant Ihab Abuwarda because, on information and belief, Defendant Ihab Abuwarda is a resident of California, and this this lawsuit arises out of Defendant Ihab Abuwarda's purposeful and unlawful conduct knowingly directed to Plaintiff within the State of California and this District.

12. This Court has personal jurisdiction over Defendant Wassim Abuwarda because, on information and belief, Defendant Wassim Abuwarda is a resident of California, and this this lawsuit arises out of Defendant Wassim Abuwarda's purposeful and unlawful conduct knowingly directed to Plaintiff within the State of California and this District.

13. This Court has personal jurisdiction over Defendant Sami Halwani because, on information and belief, Defendant Halwani is a resident of California,

and this this lawsuit arises out of Halwani's purposeful and unlawful conduct knowingly directed to Plaintiff within the State of California and this District.

14. Venue is further proper in this District under 28 U.S.C. § 1391 (b)(2) because the acts, liabilities, and events claimed in this action arose in and were directed at Plaintiff within this District, in Orange County. Venue is also proper in this district under 28 U.S.C. § 1391 (b)(1) because Defendants reside in this district.

## GENERAL ALLEGATIONS

15. In or around 2015, Plaintiff's founder, Mr. Jamil Ibaidallah, owned a car dealership and hired Defendant Razavi as a marketing associate for the dealership. During his employment, Defendant Razavi engaged in business practices that Mr. Ibaidallah objected to, and the employment relationship was severed.

16. Defendant Ihab Abuwarda owned at least three car dealerships on the same street as Mr. Ibaidallah's dealership and Defendant Razavi went to work for Defendant Ihab Abuwarda when his employment with Mr. Ibaidallah was terminated. Subsequently, Defendant Ihab Abuwarda sued Mr. Ibaidallah for breach of contract and as a result, Plaintiff's car dealership was forced to close.

17. Mr. Ibaidallah opened a new car dealership called Geneva Motors and immediately began receiving false leads and negative online reviews from fictitious users.

18. In or around 2017, Plaintiff began developing car dealership websites, inventory management, and marketing platform for local businesses. Shortly after Mr. Ibaidallah began to realize commercial success, Defendant Razavi also began marketing and selling websites, inventory management, and marketing platform for local car dealerships.

19. In or around 2019, Plaintiff began developing and marketing CRM software specifically designed for car dealerships. The software was specifically designed for the nuanced issues facing car dealerships and was based on the Mr. Ibaidallah's experience and expertise in the industry. Subsequently, Mr. Ibaidallah was informed by potential clients that Defendants were now also in the business of developing CRM software and inventory management specifically designed for car dealerships. Defendants developed software and a website identical to that of Plaintiff's copyright protected website (U.S. Copyright Registration No. TX-9-115-720). *See* Exhibit 1. Defendants' CRM software also included Plaintiff's trademark protected "TOUCHES" mark and was used in the same manner as used by Plaintiff.

20. On or about March 18, 2020, Plaintiff hired Defendant Halwani as a sales associate. As a part of his employment agreement and because he had access to Plaintiff's proprietary information, Defendant Halwani agreed to and signed a non-disclosure agreement, a non-compete agreement, and a non-solicitation agreement.

21. As part of his employment, Defendant Halwani was responsible for contacting potential customers to present Plaintiff's products for sale. In order to do his job, Defendant Halwani was granted access to Plaintiff's customer lists and product source codes.

22. During his employment, Defendant Halwani demanded a raise in pay from Plaintiff. Plaintiff declined to raise Defendant's rate of pay and, as a result, Defendant Halwani ended his employment with Plaintiff. Shortly thereafter, Defendant Halwani began working for Defendant Get My Auto. Prior to his departure, Defendant Halwani accessed Plaintiff's confidential information, including, but not limited to, customer lists, program design files and software

source code and delivered this information to his new employer, Defendant Get My Auto.

23. After his departure, Plaintiff learned that Defendant Halwani and Defendant Wassim Abuwarda were long-time friends prior to his employment with Plaintiff.

24. Soon after Defendant Halwani began working for Defendant Get My Auto, at least seven of Plaintiff's customers or potential customers who had expressed an interest in Plaintiff's product terminated their relationships with Plaintiff or informed Plaintiff that Defendants have contacted them misrepresenting that Plaintiff engages in illegal and unethical business practices. These customers or potential customers include Toyota of Glendora, Zee Motors, Keller Automotive Group, Auto Select, Auto Resources, Sierra Auto Center, and Mike's Auto Sales.

25. When asked, many of these customers expressed that the Defendants stated Plaintiff engages in illegal business practices, provides stolen leads to their customers, and stole the CRM software from the Defendants, product does not function as described. All of these statements are untrue. At this time, Plaintiff also noticed an acceleration in false, negative reviews submitted under suspicious accounts on popular online review forums, such as Google.com.

26. In or around March 2022, Plaintiff's sales representative presented their CRM software to a new customer, Alsbou Motors in Riverside, who unknowingly had previously been a customer of Defendant Get My Auto. After discussing the features and benefits of Plaintiff's software, the customer agreed to enter into a sales contract with Plaintiff and terminated his relationship with Defendant Get My Auto. Upon termination of their agreement, Defendant Get My Auto's owners and employees began incessantly contacting the customer to falsely state that Plaintiff's employees engage in illegal business practices and

have stolen data and leads from Defendant Get My Auto. Defendant Get My Auto's owners and employees also falsely stated Plaintiff's product does not work and would be a waste of time and money. One week later, the customer contacted Plaintiff to inform them that the Defendants "have gone crazy" since learning that they lost business to Plaintiff and have been relentlessly attacking and misrepresenting Plaintiff's product and business practices in an effort to regain the business. The customer stated that, although he is grateful for the opportunity to work with Plaintiff's "awesome company," at this time, he would like to cancel his services.

27. In or around March 2022, Defendants Razavi and Ihab Abuwarda contacted a second dealership, Own a Car Fresno, specifically speaking to marketing manager, Mark Eagles. Mr. Eagles stated that the Defendants "went crazy" when he told Defendants that their product looks a lot like Plaintiff's product. Defendant Razavi then told Mr. Eagles that he knows who all of Plaintiff's dealers are and it is his objective to contact them and take them over.

28. In or around April 2022, a third customer, Mike Auto Sales, contacted Plaintiff to cancel services and stated that he heard Plaintiff's product was stolen from Defendants. After some discussion, the customer stated that it was Defendant Wassim Abuwarda who told him that Plaintiff's product was stolen.

29. On April 21, 2021, Plaintiff's counsel contacted the Defendants to inform them of these claims, however Defendants have not responded to Plaintiff's correspondence and have not expressed an interest in resolving this matter short of litigation.

# FIRST CLAIM FOR RELIEF

## Copyright Infringement Under 17 U.S.C § 101, et seq.

### (Against All Defendants)

30. Plaintiff incorporates the preceding allegations as if fully set forth herein.

31. Plaintiff owns all right, title and interest in the copyright to the photographs, HTML and source code identified in Copyright Registration No. TX-9-115-720.

32. Plaintiff is informed and believes and herein alleges that with full knowledge of the right of Plaintiff as related to the copyright protected material, Defendants infringed on Plaintiff's copyright by making or causing to be made an identical product and allowing others access to the copyrighted materials.

33. Defendants performed these acts without the permission, license or consent of Plaintiff.

34. Plaintiff notified Defendants that their product infringes upon Plaintiff's copyright as alleged herein, yet Defendants continued to infringe by maintaining and refusing to remove the product as distributed.

35. Since receiving correspondence from Plaintiff, Defendants' distribution and use of Plaintiff's copyrighted materials, with knowledge that the copying was unauthorized and unlicensed, constitutes willful copyright infringement.

36. Plaintiff has suffered, and continues to suffer, substantial actual damages as a result of Defendants' actions.

37. Defendant's unlawful conduct will continue to damage Plaintiff unless enjoined by the court.

## SECOND CLAIM FOR RELIEF

### Trademark Infringement

### (Against All Defendants)

38. Plaintiff incorporates the preceding allegations as if fully set forth herein.

39. Plaintiff owns and posses the right of first use to the trademark "TOUCHES" as used in the classification for customer relationship management. Plaintiff has used the mark in commerce in connection to CRM software, specifically, software management for car dealerships, since approximately December 2020. Defendants copied Plaintiff's trademark to market their own imitation product in commerce.

40. Plaintiff did not authorize Defendants's use of the trademark. Defendants's use of Plaintiff's trademark is likely to cause confusion in the marketplace, misrepresentation as to Defendants' association with Plaintiff's brand, and deception as to the true owner of the trademark. Defendants' unlawful exploitation of the trademark has caused actual confusion in the marketplace.

41. Defendants have produced, marketed, offered for sale, sold, and distributed products bearing Plaintiff's trademark.

42. Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's trademark, in connection with the marketing, sale, and distribution of Defendants' products. The foregoing has caused and will continue to cause confusion and deception to the public. On information and belief, Plaintiff alleges actual confusion has resulted due to Defendants' unauthorized use of the trademark.

43. Plaintiff is informed and believes, and on that basis alleges, Defendants infringed the trademark by producing, marketing, selling, and distributing products infringing upon Plaintiff's rights in the trademark.

44. Due to Defendants' acts of infringement, Plaintiff has suffered substantial damages to its business in an amount to be established at trial.

45. Due to Defendants' acts of infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

46. Due to Defendants' acts of trademark infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's trademark. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the trademark in an amount to be established at trial.

47. Due to Defendants' actions, constituting unauthorized use of Plaintiff's trademark, Plaintiff has suffered and continues to suffer substantial and irreparable injury, for which Plaintiff has no adequate remedy at law.

48. Plaintiff is informed and believes, and on that basis alleges, Defendants' misappropriation is knowing, intentional, wanton, and willful, entitling Plaintiff to treble damages, profits, attorney's fees, and costs.

### THIRD CLAIM FOR RELIEF
### Defamation – Libel
### (Against All Defendants)

49. Plaintiff incorporates the preceding allegations as if fully set forth herein.

50. Defendants' statements posted on the aforementioned online review forums and text messages to Plaintiff's customers are defamatory.

51. Defendants published or caused these defamatory statements to be published by posting said false reviews.

52. Defendants false and defamatory statements were of and concerning Plaintiff, and contained false statements that Plaintiff was unfit for their business

resulting in lost profits, decreased business traffic, and adverse contractual consequences.

53. Defendants false and defamatory statements were published with the intent to harm Plaintiff's good name and reputation by falsely accusing Plaintiff of theft and unethical business practices.

54. Defendants published these false and defamatory statements with actual malice and knowledge that the statements were false, or with reckless disregard to whether they were false or not.

55. Defendants continues to engage in the publication of further defamatory statements of Plaintiff.

56. The false and defamatory statements published by Defendants have remained available to millions of internet users, as well as actual and potential customers. Plaintiff has no means of removing these false and defamatory statements from the internet.

57. In carrying out the conduct, Defendants acted negligently, willfully, maliciously, and/or with reckless indifference to the consequences of their actions against Plaintiff.

58. As a direct and proximate result of Defendants intentional and malicious publication of false and defamatory statements, Plaintiff has been and will continue to be damaged and injured in its character and reputation.

## FOURTH CLAIM FOR RELIEF

### Defamation Per Se

### (Against All Defendants)

59. Plaintiff incorporates the preceding allegations as if fully set forth herein.

60. Defendants statements posted on the aforementioned online review forum and text messages sent to Plaintiff's customers are defamatory per se.

61. Plaintiff is informed and believes Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause external statements of defamation, of and concerning Plaintiff, to be communicated to third persons and to the community. These false and defamatory statements included express and implied statements that portrayed Plaintiff and Plaintiff's Employees as persons who lie and steal. The statements were designed to harm Plaintiff's business, when the reality is that Defendants have lied about and stolen from the Plaintiff. Defendants' false statements expressly and impliedly state that Plaintiff is unfit for its trade.

62. Defendants conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited dissemination of defamatory statements to be published on the aforementioned online review forum, of and concerning Plaintiff, to third persons, who had no need or desire to know. All of the third person(s) to whom these Defendants disseminated false information are believed to include community members, but are unknown to Plaintiff at this time.

63. Defendants false and defamatory statements were of and concerning Plaintiff, and contained false statements that Plaintiff was unfit for its business resulting in lost profits, decreased business traffic, and adverse contractual consequences.

64. Defendants false and defamatory statements were published with the intent to harm Plaintiff's good name and reputation by falsely accusing Plaintiff of theft and unethical business practices. The defamatory meaning of all of the above-described false and defamatory statements, and their reference to Plaintiff, were understood by other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

65. Defendants published these false and defamatory statements with actual malice and knowledge that the statements were false, or with reckless disregard to whether they were false or not.

66. Defendants continue to engage in the publication of defamatory statements concerning Plaintiff.

67. The false and defamatory statements published by Defendants regarding Plaintiff have remained available to millions of internet users. Plaintiff has no means of removing these false and defamatory statements from the internet.

68. The defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes defamatory statements will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' statements, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

69. In carrying out the aforementioned conduct, Defendants acted negligently, willfully, maliciously, and/or with reckless indifference to the consequences of their actions against Plaintiff.

70. The statements being made by Defendants about Plaintiff are defamatory and libelous per se. The statements tend to be injurious to Plaintiff in its trade and profession. The statements are not about a private individual and do not relate to a matter of public concern.

71. As a direct and proximate result of Defendants intentional and malicious publication of false and defamatory statements, Plaintiff has been and will continue to be damaged and injured in character and reputation. Plaintiff has suffered injury to its business, and professional reputation, including economic loss in the form of lost contractual income and future earnings.

72. Defendant's defamatory statements were a substantial factor in causing Plaintiff harm.

## FIFTH CLAIM FOR RELIEF

### Business Disparagement/Trade Libel

### (Against All Defendants)

73. Plaintiff incorporates the preceding allegations as if fully set forth herein.

74. Defendants' statements posted on the aforementioned online review forum constitute trade libel.

75. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, made a false, disparaging, and defamatory statement regarding Plaintiff's business or services and that Defendants knew such statements were false at the time they were made.

76. Defendants' statements relating to Plaintiff were intentionally made in order to injure Plaintiff's business, business reputations, and ability to provide professional services, or should have been recognized by Defendants as being likely to cause harm to Plaintiff.

77. As a result of such business disparagement, Plaintiff has suffered actual pecuniary damage in lost prospective business with existing and potential clients that were deterred from doing business with Plaintiff in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

78. Plaintiff incorporates the preceding allegations as if fully set forth herein.

79. By the acts alleged herein, Defendants have intentionally caused Plaintiff's founder and employees to suffer severe emotional distress. Defendants have made their intention to destroy another of Mr. Ibaidallah's businesses clear.

80. As a direct, proximate and foreseeable result of the conduct described above, Plaintiff has suffered and continue to suffer substantial losses and other damages in the precise amount to be proven at trial.

81. Because the aforementioned acts of Defendants were willful, oppressive, fraudulent, and/or malicious, Plaintiff is entitled to exemplary damages pursuant to Civil Code § 3294 in an amount to be ascertained at the time of trial.

## SEVENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

### (Against All Defendants)

82. Plaintiff incorporates the preceding allegations as if fully set forth herein.

83. By the acts alleged herein, Defendants has negligently caused Plaintiff's founder and employees to suffer severe emotional distress.

84. As a direct, proximate and foreseeable result of the conduct described above, Plaintiff has suffered and continue to suffer substantial losses and other damages in the precise amount to be proven at trial.

85. Because the aforementioned acts of Defendants were willful, oppressive, fraudulent and/or malicious, Plaintiff is entitled to exemplary damages pursuant to Civil Code § 3294 in an amount to be ascertained at the time of trial.

## EIGTH CLAIM FOR RELIEF

### Tortious Interference with Prospective Economic Advantage

### (Against All Defendants)

86. Plaintiff incorporates the preceding allegations as if fully set forth herein.

87. By the acts alleged herein, Defendants tortiously and intentionally interfered with Plaintiff's prospective economic advantages by, among other things, disparaging and defaming Plaintiff in the marketplace for the purpose of preventing third parties from doing business with Plaintiff.

88. As a direct, proximate and foreseeable result of the conduct described above, Plaintiff has suffered and continues to suffer substantial losses and other damages in the precise amount to be proven at trial.

89. Because the aforementioned acts of Defendants were willful, oppressive, fraudulent and/or malicious, Plaintiff is entitled to exemplary damages pursuant to Civil Code § 3294 in an amount to be ascertained at the time of trial.

90. Defendants' wrongful conduct, unless and until enjoined and restricted by order of this Court, will cause great and irreparable injury to Plaintiff in that it will interfere with prospective business opportunities. Plaintiff have no adequate remedy at law for these injuries. The damage to business relations and the loss of potential business opportunities cannot be adequately compensated in monetary damages.

91. Unless and until enjoined by this Court, Defendants' conduct will continue. Accordingly, an injunction is necessary to prevent further misappropriation to Plaintiff.

## NINTH CLAIM FOR RELIEF

### False Light by Written Publication

### (Against All Defendants)

92. Plaintiff incorporates the preceding allegations as if fully set forth herein.

93. The utterances of Defendants were published online on Google.com's review forum. These platforms are used by millions of users each day for the

purpose of determining which businesses to engage for particular products or services.

94. Plaintiff asserts that, while defamation concerns statements that are actually false, false light is about false implications. Here, Defendants by their utterances, republished in writing on at least the Google.com online review forum, as well as communications to Plaintiff's current and prospective customers, implied that Plaintiff stole their product, engages in unethical business practices, produced a nonfunctional product, and falsely published and disseminated that Plaintiff is unfit for its business.

95. Defendants' statements implied dishonesty, deceitfulness, and falsity which placed Plaintiff in a false light.

96. As a result of Defendants' implications of dishonesty, Plaintiff's integrity and honesty have been questioned and attacked.

97. Further, the implications of dishonesty were displayed in the sight and observation of all who use and have seen the online reviews, which meets the threshold requirement of publication.

98. As a direct and proximate result of Defendants' tortious implication of dishonesty, which was published and circulated online and to several different individuals, Plaintiff was caused to suffer damages as may be proven at the time of trial.

99. Plaintiff asserts that the conspiratorial activities of the Defendants, and each of them, were willful, and done with malice intended to injure the Plaintiff. Defendants above-described conduct was done with a conscious disregard of the rights of the Plaintiff and with the intent to cause Plaintiff serious injury and damage.

100. Defendants were at all times relevant herein, aware of the probable consequences of their conduct but, nevertheless, willfully and deliberately failed to

avoid but caused the consequences thereof. The conduct, thus, constituted malice, fraud, and despicable conduct and Plaintiff is, therefore, entitled to recover punitive damages in an amount subject to proof at trial appropriate to punish and deter others from engaging in similar conduct.

## TENTH CLAIM FOR RELIEF

### Preliminary and Permanent Injunction

### (Against All Defendants)

101. Plaintiff incorporates the preceding allegations as if fully set forth herein.

102. Upon information and belief, some or all of the improper and unlawful conduct of Defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and Plaintiff will continue to be damaged by the same.

103. In the absence of the entry of a preliminary and permanent injunction by the court, Plaintiff will suffer serious and irreparable harm and injury, including but not limited to damage to it's reputation.

104. The entry of a preliminary and permanent injunction will not unduly harm or burden Defendants because he is required as a matter of law to refrain from disseminating defamatory statements regarding Plaintiff.

105. Further, public policy favors the entry of a preliminary and permanent injunction because, inter alia, such relief will prevent unlawful conduct and will preserve and protect Plaintiff's reputation.

## ELEVENTH CLAIM FOR RELIEF

### Breach of Contract

### (Against Defendant Halwani)

106. Plaintiff incorporates the preceding allegations as if fully set forth herein.

107. Defendant Halwani intentionally and purposefully breached his contractual obligations with Plaintiff when he accepted employment with Defendant Get My Auto and disclosed to his new employer confidential information, including, but not limited to, Plaintiff's customer lists, design and software source code.

108. As a direct and proximate cause of Defendant Halwani's breach, Plaintiff has suffered and continues to suffer substantial losses and other damages in the precise amount to be proven at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully prays for judgment in its favor and against Defendants as follows:

1. For judgment in its favor, and against Defendants, for damages in an amount to be proven at trial;

2. That the Defendants, and their agents, servants, employees, successors, assigns and all others in concert and privity with them, be preliminarily and permanently enjoined from unauthorized copying and use of Plaintiff's copyrighted materials, pursuant to 17 U.S.C. §101.

3. For preliminary and permanent injunctions to be issued out of this Court restraining Defendants from disseminating any further false and defamatory statements or misrepresentations regarding Plaintiff;

4. For an order requiring Defendants to remove the false and defamatory statements regarding Plaintiff published by Defendants and the other, as yet unknown Defendants from the internet;

5. For an order requiring Defendants and the other, as yet unknown Defendants to post a retraction of all of the false and defamatory statements published by Defendant;

6. For compensatory damages in excess in an amount to be proved at the time of trial;

7. For punitive damages;

8. For costs and attorney's fees, investigatory fees, and costs and expenses; and

9. For any other such relief as the Court may deem just and proper.

Dated: May 13, 2022                    Law Offices of Mandana Jafarinejad, P.C.

By: /s/ Mandana Jafarinejad
Mandana Jafarinejad, Esq.
Attorney for Plaintiff