JS-6

**NITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| DEALERSGEAR, INC. et al., Plaintiffs, v. GET MY AUTO, LLC et al., Defendants. | Case No. SA CV 22-01011-DFM<br>Order Granting Defendants' Motion for Summary Judgment (Dkt. 45) |
|---|---|

Plaintiffs DealersGear, Inc. and Jamil Ibaidallah brought this action against Defendants Get My Auto, LLC, Raz Motor Group Inc., Amir Razavi, Ihab Abuwarda, Wassim Abuwarda, and Sami Halwani, alleging violations of the Trademark Act, 15 U.S.C. §§ 1051, the Copyright Act of 1976, 17 U.S.C. §§ 101, and various state law claims.

Before the Court is Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court GRANTS the motion.

## I. BACKGROUND

DealersGear was formed by Ibaidallah in 2017. See Dkt. 48, Second Amended Complaint ("SAC") ¶ 21. DealersGear is an "all in one marketing platform for auto dealers," providing website development services, a marketing platform, and an inventory management system. Id.

In 2019, Plaintiffs began developing and marketing Customer Relationship Management ("CRM") software, designed to manage the relationship between a business and its customers. See id. ¶ 22. Plaintiffs registered a copyright to all photographs, HyperText Markup Language ("HTML"), and source code (Reg. No. TX-9-115-720). See id. & Ex. 1. Plaintiffs also registered the trademark "TOUCHES" as used in the classification for customer relationship management. See id. ¶ 23 & Ex. 2.

On March 18, 2020, Plaintiffs hired Halwani as a sales associate. See id. ¶ 25. Halwani, who was granted access to Plaintiffs' customer lists, product source codes, and other software, signed non-disclosure, non-compete, and non-solicitation agreements. See id. ¶¶ 25, 26. Halwani left for Raz Motor Group after not receiving a pay increase. See id. ¶ 27. Plaintiffs allege that Halwani copied and transferred their confidential information to Raz Motor Group. See id. After Halwani left, several of Plaintiffs' customers terminated their business relationship due to Defendants misrepresenting that Plaintiffs were engaged in illegal and unethical practices. See id. ¶¶ 31, 32. Plaintiffs noticed an acceleration in false, negative reviews, which they believe originated from Defendants. See id. ¶ 32.

In March 2022, a DealersGear's employee marketed Plaintiffs' CRM software to Alsbou Motors. See id. ¶ 33. Alsbou Motors agreed to enter a sales contract with Plaintiffs and terminate its relationship with Raz Motor Group. See id. ¶ 34. Defendants harassed Alsbou Motors's employees, ultimately resulting in the company terminating Plaintiffs' services. See id. ¶¶ 35-37. Similarly, in April 2022, a representative from Mike's Auto Sales terminated Plaintiffs' services after Defendants told them that Plaintiffs had stolen their products. See id. ¶ 40.

Plaintiffs assert thirteen causes of action: (1) copyright infringement, (2) trademark infringement, (3) defamation—libel, (4) defamation per se,

(5) trade libel, (6) intentional infliction of emotional distress, (7) negligent infliction of emotional distress, (8) intentional interference with existing contract, (9) intentional interference with prospective economic advantage, (10) false light by written publication, (11) breach of contract, (12) conspiracy, and (13) preliminary and permanent injunction. See id. ¶¶ 42-175.

On October 20, 2023, Defendants filed their Motion for Summary Judgment and Statement of Uncontroverted Facts. See Dkts. 45 ("MSJ"), 45-1 ("UF").[1] On November 3, Plaintiffs filed their opposition. See Dkt. 55 ("Opp'n"). On November 10, Defendants filed their reply. See Dkt. 59 ("Reply").

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "bears the initial responsibility of informing the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 323, 325. The non-moving party must then "present some evidence establishing each element of their claims on which they would bear the burden of proof at trial." Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990). Conclusory allegations unsupported by factual data

[1] Defendants Ihab and Wassim Abuwarda joined in Defendants' MSJ, see Dkt. 46, but filed a separate reply, see Dkt. 58.

are insufficient to defeat a summary judgment motion. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. See Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Statement of Genuine Disputes[2]

Plaintiffs failed to file a Statement of Genuine Disputes as required by Local Rule 56-2. "In determining any motion for summary judgment or partial

[2] On October 30, 2023, Plaintiffs moved for an order requiring Defendants to comply with Judge Holcomb's Standing Order or in the alternative for leave to file a late response. See Dkt. 50. Plaintiffs noted that Defendants did not file a Joint Statement of Undisputed Facts and Genuine Disputes, as they were required to do. See id. at 4-5 (citing Dkt. 11). The next day, however, the case was reassigned to this Court for all proceedings, based on the consent of the parties. See Dkt. 51. The reassignment mooted all pending motions and Plaintiffs did not re-file or re-notice their motion. See Armstrong v. Guccione, 219 F.App'x 90, 90-91 (2d Cir. 2007) (explaining that reassignment to different district court judge mooted pending motions).

summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-4. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to Statement of Genuine Disputes." Id. Therefore, the Court assumes that the material facts as claimed and adequately supported by Defendants are admitted to exist without controversy.

**B. Copyright Infringement**

Plaintiffs allege that Defendants made an identical product to the material copyrighted under Plaintiffs' Reg No. TX-9-115-720. See SAC ¶¶ 22, 43. Plaintiffs' copyright, entitled "CRM touches feature and design" and "CRM sticky notes feature and design," encompasses features of Plaintiffs' website design and CRM. See id. ¶ 43 & Ex. 1. The work covered by the registration is attached to Defendants' MSJ as Exhibit 11. See Dkt. 45-9.

Proof of copyright infringement requires a plaintiff to show that (1) he or she owns a valid copyright and (2) that defendant copied protected aspects of the work. See Skidmore as Trustee for Randy Craig Wolfe Tr. v. Led Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020).

---

Instead, Plaintiffs proceeded to file their Opposition without any mention of this issue and unaccompanied by their own separate statement (or any evidence at all), as required by Local Rule 56-2. The Court cannot grant relief when a party does not ask for it.

**1. Valid Copyright**

"A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" United Fabrics Int'l, Inc. v. C & J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)). It is undisputed that DealersGear has a registered copyright to the photographs, HTML, and source code identified in Reg. No. TX-9-115-720. Accordingly, the first prong is met.[3]

**2. Copied Protected Aspects**

"The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" Skidmore, 952 F.3d at 1064 (citation omitted). In the absence of direct evidence of copying, which is the case here, the plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018).

To prove access, the plaintiff must show that the defendant had a "reasonable opportunity" or "reasonable possibility" of viewing their work prior to the creation of the infringing work. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000). "Reasonable access" requires more than a "bare possibility," and "may not be inferred through mere speculation or conjecture." Id. "Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work or (2) the plaintiff's work has been widely disseminated." Id.

---

[3] Defendants note that Plaintiffs never specifically allege what Get My Auto copied, and that neither the word "touches" nor claims to "format" or "layout" are copyrightable. See MSJ at 11. These arguments, although well-taken, were not necessary to decide the copyright claim.

Plaintiffs' access theory is based on a chain of events. Relying on Ibaidallah's testimony, Plaintiffs argue that Halwani had access to the server that contained the copyrighted software that he later copied and provided to Get My Auto. See Opp'n at 9 (citing MSJ, Ex. 26 at 105:17-107:18). But Plaintiffs cite to pages of the Ibaidallah transcript that were neither included with Defendants' motion nor filed by Plaintiffs, and therefore are not in the record before the Court. A party opposing summary judgment may not simply rest on its pleadings; it must demonstrate a genuine dispute of material facts by "citing to particular parts of materials in the record, including depositions." Fed. R. Civ. P. 56(c)(1)(A); see also Lipoplus, Inc. v. Kohan, No. 18-10220, 2019 WL 8231041, at *7 (C.D. Cal. Dec. 19, 2019) (refusing to consider opposing party's characterization of deposition testimony when party had not submitted transcript).

In contrast, Defendants presented Halwani's deposition testimony that he was unable to see the written code behind the CRM software, was not shown any code, and that he did not disclose any CRM-related code to anyone. See MSJ, Ex. 29 at 23:8-22. Accordingly, Plaintiffs have not raised a triable issue of fact regarding access.

Regardless, an independent ground for summary judgment exists because the works are not sufficiently similar. To establish unlawful appropriation, the Ninth Circuit requires a finding of "substantial similarity" under both an "extrinsic" and "intrinsic" test. Skidmore, 952 F.3d at 1064. The extrinsic test "compares the objective similarities of specific expressive elements in the two works." Id. "For summary judgment, only the extrinsic test is important." Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994). "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury cannot find substantial similarity without evidence on both the extrinsic and intrinsic tests." Id.

Plaintiffs cite Skidmore and then conclude, without any evidence or analysis, that there is a genuine issue of fact as to whether DealarGear's and Get My Auto's software are sufficiently similar. See Opp'n at 9-10. Strikingly, Plaintiffs did not provide the Court with a copy of the HTML and source code they allege that Defendants copied. Nor did they provide the Court with a copy of Defendants' software. According to Defendants, this is because Plaintiffs inexplicably did not request a copy of their software in discovery. In the absence of any evidence, no reasonable jury could conclude that there are substantial similarities between DealersGear's and Get My Auto's software.

The Court GRANTS summary judgment on this issue.

## C. Trademark Infringement

Plaintiffs allege that Defendants' CRM software included Plaintiffs' trademark "TOUCHES." See SAC ¶¶ 24, 52.

To prevail on a trademark infringement claim, a plaintiff must show (1) that it has a valid, protectable trademark, and (2) that defendant's use of the mark is likely to cause confusion. See Applied Info. Sci. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).

Plaintiffs do not have a registered trademark. See UF ¶ 23. Unregistered trademarks can obtain only common law trademark protection, which requires the mark either "(1) [be] inherently distinctive or (2) [have] acquired distinctiveness through secondary meaning." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). Moreover, "when a mark is not registered, the presumption of validity does not apply; therefore, the plaintiff is left with the task of satisfying its burden of proof of establishing a valid mark absent application of the presumption." Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928 (9th Cir. 2005).

**1. Type of Mark**

Trademarks may be "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." Two Pesos, 505 U.S. at 768.

The parties dispute whether the mark is descriptive or suggestive. "Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.8 (9th Cir. 1988). A mark is "suggestive" if "a consumer must use imagination or any type of multistage reasoning to understand the mark's significance." Id. "Examples of suggestive marks include 'Air Care' for a service that maintains medical equipment used for administering oxygen, and 'Anti–Washboard' for a soap that makes scrubbing unnecessary when washing clothes." Id. (internal citations omitted). "A descriptive mark is entitled to trademark protection only if it has acquired secondary meaning," whereas suggestive marks "receive trademark protection without proof of secondary meaning." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1142, n.3 (9th Cir. 2002) (citations and internal quotation marks omitted).

Defendants argue that "TOUCHES" is descriptive because it is a description of a functional characteristic of Plaintiffs' CRM software. See MSJ at 12-13. Plaintiffs argue that the mark is suggestive because "some imagination is required to establish that the nature of the product is software designed to assist in managing customer contacts." Opp'n at 14.

In March 2023, the USPTO issued a non-final refusal of registration based in part on Plaintiffs' mark being merely descriptive:

> Applicant's services include customer relationship management and software for tracking, reporting, and sharing customer leads. Applicant's specimen shows the applied-for mark, TOUCHES, at the top of a screen on customer tracking page next

> to a hand symbol. As shown on the specimen, it appears TOUCHES refers to interactions with leads in applicant's software.
>
> Ultimately, when purchasers encounter applicant's services using the mark TOUCHES, they will immediately understand the mark as indicating a feature of the services--that the mark merely refers to interactions with potential customers, as tracked by applicant's software--and not an indication that applicant is the source of the services. Therefore, the mark is merely descriptive, and registration is refused pursuant to Section 2(e)(1) of the Trademark Act.

MSJ, Ex. 23. After Plaintiffs responded by asserting a claim of acquired distinctiveness, the USPTO issued a Final Office Action rejecting Plaintiffs' application in September 2023. See id., Ex. 24. Although the Court does not have to defer to the USPTO's findings, they can be persuasive. See Carter–Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 802 (9th Cir. 1970)

On this record, the Court concludes that the "TOUCHES" mark is descriptive. Contrary to Plaintiffs' assertions, almost no "imagination" or "multi-stage reasoning" is required to connect the mark with Plaintiffs' products. Defendants have put forth undisputed evidence that the words "touches" and "touchpoints" are widely used in the marketing industry to refer to the number of interactions with a potential customer, a fact that Ibaidallah acknowledged in his deposition testimony. See UF ¶ 24 (citing Ibaidallah Depo. at 236:13-238:9). As used by Plaintiffs, "TOUCHES" refers to interactions with leads in their software. Therefore, when potential CRM customers encounter Plaintiffs' services using the mark TOUCHES, they will understand the mark as indicating a feature of the service. See Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 632 (9th Cir. 2005) (explaining that descriptive marks "merely describe a characteristic of a product").

### 2. Secondary Meaning

"Although descriptive terms generally do not enjoy trademark protection, a descriptive term can be protected provided that it has acquired 'secondary meaning'" in the minds of consumers. Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999). "In determining whether a mark has obtained secondary meaning, courts consider: (1) whether actual purchasers of the product bearing the mark associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark; and (4) whether use of the mark has been exclusive." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 991 (9th Cir. 2006). To survive summary judgment, the trademark claimant must present sufficient evidence of secondary meaning to create a genuine dispute of fact. See Japan Telecom, Inc. v. Japan Telecom Am. Inc., 287 F.3d 866, 873 (9th Cir. 2002).

Plaintiffs have not submitted any evidence of secondary meaning. Instead, they fall back on the argument that "TOUCHES" is suggestive. See Opp'n at 13-14. This argument having failed, the Court finds that "TOUCHES" has not acquired secondary meaning.

"TOUCHES" is a descriptive mark that did not achieve secondary meaning before Defendants' allegedly infringing use began. As such, it is not valid or protectable. The Court GRANTS summary judgment on this issue.

## D. Defamation, Trade Libel, and False Light

Plaintiffs argue that Defendants made several false statements to hurt their business. See SAC ¶¶ 64, 75, 92, 145. Defendants argue that Plaintiffs offer no evidence to establish their claims for libel, defamation per se, trade libel, and false light by written publication. See MSJ at 14-17.

Libel in California law is a form of defamation. See Cal. Civ. Code § 44. Libel is "a false and unprivileged publication by writing, printing, picture,

effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.'' Id. § 45. The elements of a libel claim are (1) a publication; (2) that is false; (3) that is defamatory; (4) that is unprivileged; and (5) that has a natural tendency to injure or that causes special damage. See Shively v. Bozanich, 31 Cal. 4th 1230, 1242-43 (2003). If the challenged material is defamatory ''on its face,'' meaning that it does not need further explanation to show that it is defamatory, then it is ''actionable'' without the plaintiff having to plead special damages. Cal. Civil Code § 45a, 48a.

The elements of a trade libel claim are "(1) a statement that (2) was false, (3) disparaging, (4) published to others in writing, (5) induced others not to deal with it, and (6) caused special damages." TYR Sport, Inc. v. Warnaco Swimwear, Inc., 679 F. Supp. 2d 1120, 1140 (C.D. Cal. 2009) (citation omitted). Where, as here, a false light claim is included alongside a defamation claim, "the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." Eisenberg v. Alameda Newspapers, Inc., 74 Cal. App. 4th 1359, 1385 n.13 (1999) (citations omitted).

First, Defendants argue that Plaintiffs have admitted that there is no evidence of defamation. See MSJ at 14-15. On June 7, 2023, Defendants served requests for admission (RFAs); Nos. 5 and 6 asked Plaintiff to admit that "there is no evidence that any allegedly defamatory statement" regarding DealearsGear or Ibaidallah "was made by or at the direction of any defendant in this action." See MSJ, Ex. 34 at 4. It is undisputed that Plaintiffs did not serve any response to the RFAs. See UF ¶ 56.

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer

or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Once admitted, RFAs are "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). No such motion has been filed, much less granted. Accordingly, the RFAs, having been deemed admitted, establish that there is no evidence of defamatory statements made by any Defendant in this action.

Second, Defendants argue that no libelous reviews were ever posted. See MSJ at 15. Defendants note that Plaintiffs did not produce any of the negative online reviews in discovery and that Ibaidallah answered "no" when asked if there is any evidence that Defendants posted false negative reviews of DealersGear online. See UF ¶¶ 30, 31. Additionally, Defendants cite their own testimony that no false reviews of DealersGear were ever posted. See UF ¶ 31. Plaintiffs do not oppose these facts, which the Court finds undisputed.

Third, Defendants argue that the statements Plaintiffs identify do not constitute defamation. See MSJ at 15-16. Plaintiffs focus on two statements. First, Plaintiffs allege that Ravazi told a third party in 2017 that Ibaidallah was "delusional." See Opp'n at 16. But the one-year statute of limitations for defamation actions has long passed for that incident. See Cal. Civ. Proc. Code § 340(c). Furthermore, referring to someone as "delusional" is a hyperbolic, non-factual insult and is not defamatory. See Moyer v. Amador Valley J. Union High Sch. Dist., 225 Cal. App.3d 720, 724 (1990); Desai v. Clark, No. 11-01809, 2011 WL 3359971, at *3-4 (N.D. Cal. Aug. 2, 2011) (reference to plaintiff as a "delusional maniac" in an email was an "exaggerated, non-verifiable derision" that constituted an opinion, not fact). Second, Plaintiffs allege that Ihab Abuwarda testifed that he told someone that Ibaidallah is "a thief," "stole money from us," and "defrauded the bankruptcy." Opp'n at 16. But the deposition excerpts to which Plaintiffs cite are not before the Court,

and the Court will not consider this evidence based solely on Plaintiffs' characterization of it.

The Court GRANTS summary judgment on these issues.

**E. Negligent and Intentional Infliction of Emotional Distress**

Plaintiffs allege that they suffered emotional distress as a direct result of Defendants' statements to third parties. See ¶¶ 105, 114. Defendants argue that there is no evidence of extreme or outrageous behavior or that Plaintiffs suffered emotional distress. See MSJ at 17-18.

The elements of an infliction of emotional distress ("IIED") claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct[.]" Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993). A claim for negligent infliction of emotional distress ("NIED"), on the other hand, is "not an independent tort, but rather is derived from the tort of negligence[.]" Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.3d 583, 588 (1989). Thus, a claim for NIED requires the plaintiff to establish the traditional elements of duty, breach of duty, causation, and damages, as well as show that he or she has suffered "serious" emotional distress. Wong v. Tai Jing, 189 Cal. App. 4th 1354, 1377-78 (2010). Severe emotional distress "means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009) (citation and internal quotation marks omitted). "It is for the court to determine whether on the evidence severe emotional distress can be found[.]" Wong, 189 Cal. App. 4th at 1376.

The only evidence in the record of Plaintiffs' emotional distress is the excerpts of Ibaidallah's deposition. Ibaidallah testified that he suffered anxiety from Defendants' actions. See UF ¶ 41 ("[Like, you know, this creates anxiety. I can't sleep at night thinking what's—what's the next surprise they've prepared for [me]."). However, he did not provide any evidence that he has been diagnosed with anxiety, has sought treatment, or must take medication for it.

Moreover, Ibaidallah's generalized allegations of anxiety and loss of sleep do not rise to the level of emotional distress necessary to establish an IIED claim. See Hughes, 46 Cal. 4th at 1051 ("discomfort, worry, anxiety, upset stomach, concern, and agitation" are not severe emotional distress); Wong, 189 Cal. App. 4th at 1377 (explaining that lost sleep, upset stomach, and general anxiety are not severe emotional distress). Accordingly, Plaintiffs have failed to show the level of emotional distress necessary to establish an IIED claim.

This dooms the NIED claim as well, as the level of emotional distress required for NIED is functionally equivalent to that required for IIED. The California Supreme Court has made it clear "that to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" Wong, 189 Cal. App. 4th at 1377 (citing Molien v. Kaiser Found. Hosps., 27 Cal. 3d 916, 927-30 (1980)). "[S]erious emotional distress may be found where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Id. at 1377-78. "[T]his articulation of 'serious emotional distress' is functionally the same as the articulation of 'severe emotional distress.'" Id. at 1378. As Plaintiffs have not shown a personal, physical injury, the NIED claim falls alongside the IIED claim.

The Court GRANTS summary judgment on these issues.

## F. Intentional Interference with Contract

Plaintiffs allege that Defendants interfered with their contracts with Alsbou Motors and Mike Auto Sales. See SAC ¶ 121, 122. Defendants argue that Plaintiffs have failed to establish causation and that they enjoyed a competition privilege. See MSJ at 19-21.[4]

The elements of an intentional interference with contract claim are "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004) (citation omitted).

The third element requires Plaintiffs to show that Defendants "knew the interference was certain or substantially certain to occur as a result of its action" and that Defendants' conduct "caused the breach." Bank of New York v. Fremont Gen. Corp., 523 F.3d 902, 909 (9th Cir. 2008); see also Hahn v. Diaz-Barbara, 194 Cal. App. 4th 1177, 1196 (2011) (explaining that interference with contractual relations requires plaintiff to prove that "the contract would otherwise have been performed").

Defendants argue that Plaintiffs have not offered sufficient evidence of a causal connection, given Defendants' evidence that price-related reasons motivated the termination. See MSJ at 19-20. The Court agrees. Alsbou

---

[4] The "competition privilege" does not apply to intentional interference with contract claims. See UMG Recordings, Inc. v. Glob. Eagle Ent., Inc., No. 14-3466, 2015 WL 12746208, at *21 (C.D. Cal. Oct. 30, 2015) ("California courts have applied the competition privilege only to interference with prospective business advantage claims, not intentional interference with contractual relations claims.") (citing cases).

Motors' general manager, Ahmad Shaath, testified that Alsbou Motors ended its relationship with DealersGear because "the pricing was too expensive." See id., Ex. 33 at 19:24-20:3. Shaath further testified that Alsbou Motors replaced DealersGear with Get My Auto "simply because of the fact they were charging us 50 percent less for the same services and the same marketing." Id. at 24:25-25:4.

Plaintiffs offer no evidence that Alsbou Motors ended its relationship with DealersGear due to intentional acts by Defendants. Instead, Plaintiffs argue that Defendants services were cheaper because Halwani copied Plaintiffs' software and provided it to Get My Auto. See Opp'n at 18. Plaintiffs' speculation is without any evidence. By contrast, Defendants have put forth Halwani's testimony that he did not copy anything, as well as Ibaidallah's testimony that he does not actually know whether Defendants' platform resembles Plaintiffs. See UF ¶¶ 17, 18, 22, 52-54.

The Court GRANTS summary judgment on this issue.

**G. Intentional Interference with Prospective Economic Advantage**

Plaintiffs allege that Defendants interfered with their relationships with Alsbou Motors and Mike Auto Sales. See SAC ¶ 133. Defendants argue that their conduct was not wrongful and there was no possibility of a future economic benefit. See MSJ at 21-22.

The five elements for intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Youst v. Longo, 43 Cal.3d 64, 71 n.6 (1987).

A plaintiff must further prove that "[d]efendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995). After Della Penna, it is now "the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful . . . ." Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners, 52 Cal. App. 4th 867, 881 (1997).

Plaintiffs have failed to satisfy the independent wrongfulness requirement. Plaintiffs suggest that interference can be established "by showing the defendant intentionally interfered with an existing contract, which courts have identified as 'a wrong in and of itself.'" SAC ¶ 131 (quoting Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1158 (2003)). That is the standard for interference with contract, not interference with prospective economic advantage. See Korea Supply Co., 29 Cal. 4th at 1158 ("Thus, while intentionally interference with an existing contract is 'a wrong in and of itself,' intentionally interfering with a plaintiff's prospective advantage is not." (internal citation omitted)). Instead, "act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id. at 1159.

Plaintiffs allege that Defendants "harassed" their business partners, often detailing issues with their services. That sort of economic interference, however unpleasant, is not unlawful. Plaintiffs additionally allege that Halwani unlawfully copied their software. See Opp'n at 18. As noted above, however, Plaintiffs have not raised a genuine dispute as to whether Halwani stole their software.

The Court GRANTS summary judgment on this issue.

**H. Breach of Contract**

Plaintiffs allege that Halwani breached his contract when he accepted employment with Raz Motor Group and disclosed Plaintiffs' customer lists, design, and software source code. See SAC ¶ 158.

The elements of a breach of contract claim are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (citation omitted).

Defendants argue that there is no evidence that Halwani copied or transferred Plaintiffs' information. See MSJ at 22-23.[5] The Court agrees. As set forth in various sections above, Plaintiffs have not put forth any admissible evidence that Halwani copied Plaintiffs' software for the benefit of Get My Auto.

The Court GRANTS summary judgment on this issue.

**I. Conspiracy**

Plaintiffs allege that Defendants engaged in a conspiracy to disrupt Plaintiffs' business. See SAC ¶¶ 160-69.

Defendants correctly argue that this claim should be dismissed because civil conspiracy is not a cause of action under California law. See MSJ at 23-24; Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its

---

[5] Defendants also argue that the non-compete provision is unenforceable pursuant to California Business and Professions Code § 16600. See Mot. at 22. Plaintiffs respond that they do not allege that Halwani breached his contract by working for Raz Motor Group, see Opp'n at 20, so it is a non-issue.

perpetration" (citation omitted)). Plaintiffs do not oppose this argument. Accordingly, the Court GRANTS summary judgment on this issue.

**J. Injunctive Relief**

Plaintiffs seek injunctive relief prohibiting Defendants from committing trademark infringement, copyright infringement, and the other torts set forth above. See SAC ¶ 172.

"Injunctive relief is a remedy, not a cause of action. A cause of action must exist before a court may grant a request for injunctive relief." Ivanoff v. Bank of Am., N.A., 9 Cal. App. 5th 719, 734 (2017) (citations omitted). Because none of Plaintiffs' claims have prevailed, their request for injunctive relief necessarily fails as well.

The Court GRANTS summary judgment on this issue.

## IV. CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment. The Court will enter Judgment dismissing this case with prejudice.

Date: January 3, 2024

DOUGLAS F. McCORMICK
United States Magistrate Judge